UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JERRY VANDAGRIFF, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 10-225-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| FEDERAL BUREAU OF PRISONS, ) | **& ORDER** |
| et al., ) | |
| ) | |
| Respondent. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Jerry Vandagriff filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. R. 2. Vandagriff challenges the Federal Bureau of Prisons' ("BOP") refusal to allow him to participate in the Elderly Offender Home Detention Pilot Program—a program that transfers certain eligible elderly inmates from prison facilities to home detention for the remainder of their sentences. The Court conducts a preliminary review of habeas corpus petitions. 28 U.S.C. § 2243; *see Harper v. Thoms*, 51 F. App'x 517, 518 (6th Cir. 2002). Because it "appears from [his] application that [Vandagriff] is not entitled to" a writ of habeas corpus, 28 U.S.C. § 2243, his petition will be dismissed.

### BACKGROUND

Vandagriff is currently serving a 188-month federal prison sentence for distribution of cocaine hydrochloride. On April 29, 2009, he applied for the Elderly Offender Home Detention Pilot Program (the "Pilot Program"). Vandagriff's case manager filled out a form detailing Vandagriff's eligibility for participation in the program. There are several statutory requirements

that an inmate must meet. Among them, the inmate must be at least 65 years old; he must have served at least 10 years or 75% of his sentence, whichever is greater; his conviction must not have been for a crime of violence or a sex offense; and the BOP must determine that the inmate is "at no substantial risk of engaging in criminal conduct" or endangering the public if he is transferred to home detention. *See* 42 U.S.C. § 17541(g)(5)(A)(i)-(vii). Vandagriff's case manager's report noted that Vandagriff met most of the statutory eligibility factors, but cautioned that his "substance abuse history, history of arrests involving drugs, and lack of marketable job skills [places him at] a risk of program failure." R. 2, Attach. 6 at 2. The Warden endorsed the report and forwarded it to the BOP's Central Office for further processing.

The Central Office officially denied Vandagriff's application for the Pilot Program. The Central Office determined that Vandagriff was not eligible because he was at a substantial risk of engaging in criminal conduct or endangering the public if he was transferred to home detention. R. 2, Attach. 6 at 4. The Central Office explained that it reached this decision based on Vandagriff's history of drug abuse and prior drug convictions, his failure to participate in prison treatment programs, and his failure to enroll in vocational training programs to enhance his employment prospects. *Id.*

Vandagriff appealed the Central Office's adverse decision through the BOP's internal grievance system. The BOP denied him relief at each level of review. Vandagriff then filed this habeas corpus petition under 18 U.S.C. § 2241.

## DISCUSSION

The Court has an obligation to screen Hess's habeas petition under 28 U.S.C. § 2243. That section directs a court "entertaining an application for a writ of habeas corpus" to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, *unless it appears from the application that the applicant or person detained is not entitled thereto*." § 2243 (emphasis added). Although the Court holds a *pro se* pleading to less stringent standards than pleadings that are drafted by attorneys, s*ee Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972)), the Court must dismiss a habeas petition that is "frivolous [ ] or obviously lacking in merit." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970); *see also Small v. Endicott*, 988 F.2d 411, 414 (7th Cir. 1993) ("When the face of the petition plus any annexed exhibits plainly show that the petitioner is not entitled to relief, the district court can summarily dispose of the matter without . . . ordering [a response].").

Vandagriff's habeas petition obviously lacks merit. The BOP determined that he was not eligible for participation in the Pilot Program because he posed a substantial risk of engaging in criminal conduct or endangering the public if he was transferred to home detention. Making this determination is entirely within the purview of the BOP. The Court cannot set aside the BOP's decision unless it is "arbitrary, capricious, an abuse or discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Because Vandagriff cannot show that the BOP's decision was arbitrary and capricious or otherwise ultra vires, his habeas petition must be dismissed.

**I.     The Elderly Offender Home Detention Pilot Program—Statutory and Regulatory Framework**

The BOP established the Pilot Program in compliance with the Second Chance Act of 2007. Pub. L. No. 110-199, 122 Stat. 657 (codified at 42 U.S.C. § 17541). The Act directs the BOP to "conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a [BOP] facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced." 42 U.S.C. § 17541(g)(1)(A). The BOP is supposed to conduct the Pilot Program through at least one BOP facility during the 2009 and 2010 fiscal years. *Id.* § 17541(g)(3). The Act lists several criteria that inmates must meet in order to be eligible for the Pilot Program. Those criteria are:

(1) The inmate must be at least 65 years old;

(2) He must have served the greater of 10 years or 75 percent of his prison sentence (and that sentence cannot be a life sentence or a sentence for a sex crime, a crime of violence, or other specific offenses outlined in the statute);

(3) He must not have been convicted in the past of any federal or state crime of violence or sex offense;

(4) He must not have a history of violence or of engaging in sex offenses;

(5) He must not have escaped or attempted to escape from a BOP facility;

(6) The BOP must determine that releasing the inmate to home detention will result in a substantial net reduction of costs to the federal government; and

(7) The BOP must determine that the inmate is at no substantial risk of engaging in criminal conduct or endangering any person or the public if released to home detention.

*Id.* § 17541(g)(5)(A)(i)-(vii).

But just because an inmate meets the statutory eligibility requirements does not mean that he automatically gets to participate in the Pilot Program. The Act gives the BOP discretion to determine which eligible inmates it allows to participate. The Act provides that the BOP "*may* release *some or all* eligible elderly offenders . . . to home detention." *Id.* § 17541(g)(1)(B) (emphasis added). Therefore, to be released to home detention, an elderly inmate must both be *eligible*—he must meet the statutory requirements—and the BOP must determine that he is *appropriate* for home detention. *See Kim v. United States*, No. 10-197, 2010 WL 2813770, at *4 (D. Haw. July 14, 2010) ("Even if the BOP identifies an offender as eligible for release to home confinement, there is no statutory obligation for such release to actually come to fruition . . . . That is within the sound discretion of the Attorney General [acting through the BOP]."). The BOP issued an Operations Memorandum that includes a non-exhaustive list of factors for BOP officials to consider in determining whether an inmate who is eligible for the Pilot Program is also appropriate for release to home detention. R. 2, Attach. 6 at 19. The Operations Memorandum provides that the appropriateness determination is "within the discretion of Bureau staff, using sound correctional judgment." *Id.*

## II. The BOP's Determination that Vandagriff Is Not Eligible for Participation in the Pilot Program is not Arbitrary and Capricious

Vandagriff assails the BOP's determination that he is not eligible to participate in the Pilot Program on several grounds. First, he argues that the BOP denied his application based on incomplete information. Vandagriff claims that his case manager did not make any attempt to interview him, his prison work supervisors, or his previous case managers, thereby causing him to omit important details from his eligibility assessment, including his capacity for on-the-job problem solving, his relationship with his family, and the job skills he gained while working for the Federal Prisons Industries. Second, Vandagriff argues that the reasons the BOP gave for its conclusion that he was at risk of engaging in criminal activity or endangering the public were insufficient. He claims that his previous drug convictions do not indicate that he is at risk for further drug use, that his lack of marketable job skills is irrelevant because he will not be seeking a job after his release but instead will be collecting Social Security benefits, and that the BOP's written decision did not acknowledge that he had completed a forty-hour drug education program. And third, Vandagriff claims that the BOP failed to adequately state a rationale for its conclusion that his prior history and lack of marketable skills put him at a substantial risk of engaging in criminal conduct or endangering the public if released to home detention.

The only possible legal claim that Vandagriff can be making with these various arguments is that the BOP's decision was arbitrary and capricious, in violation of the Administrative Procedures Act ("APA"). The Second Chance Act provides that, in order for an inmate to be eligible for participation in the Pilot Program, the BOP must determine that he is "at no substantial risk of engaging in criminal conduct or of endangering any person or the public

if released to home detention." 42 U.S.C. § 17541(g)(5)(A)(vii). The statute explicitly grants the BOP the authority to make this determination. Therefore, the APA provides the only legal authority under which the Court could possibly set aside the BOP's determination and grant Vandagriff's habeas petition. *See Cellnet Commc'ns, Inc. v. FCC*, 149 F.3d 429, 438 (6th Cir. 1998). The APA provides that a court may set aside an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

This is a very lofty burden. Under the APA, the Court's review of an agency's decision is both "deferential," *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006), and "very narrow." *Cincinnati Bell Tel. Co. v. FCC*, 69 F.3d 752, 758 (6th Cir. 1995). To succeed, Vandagriff must show that the BOP "has relied on factors which Congress has not intended it to consider, . . . offered an explanation for its decision that runs counter to the evidence before the agency, or [has reached a decision that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Meister v. U.S. Dept. of Agriculture*, ___ F.3d ___, No. 09-1712, 2010 WL 3766646, at *4 (6th Cir. Sept. 29, 2010) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). As long as the agency has "considered the relevant factors" and "articulate[d] a rational connection between the facts found and the choice made," the decision is not arbitrary or capricious and the Court must let it stand. *Cincinnati Bell*, 69 F.3d at 758 (internal citations and quotations omitted).

Vandagriff cannot demonstrate that the BOP's decision was arbitrary and capricious. The agency considered relevant factors, including Vandagriff's history of substance abuse and his

7

lack of marketable job skills. The BOP did not consider any impermissible factors—indeed, the Second Chance Act does not appear to place *any* factors outside the bounds of the BOP's consideration. And the BOP articulated a rational connection between the facts that it considered (Vandagriff's history with drugs and illegal gambling, his failure to participate in treatment programs recommended by prison officials, and his lack of marketable job skills) and the conclusion it reached (that Vandagriff posed a risk of returning to criminal behavior and endangering the public if released to home detention). It is true, of course, that the BOP's review could have been more thorough. Vandagriff's case manager could have included more information about Vandagriff's work history while in prison. He could have interviewed Vandagriff personally. But the failure to include this information does not render the BOP's decision arbitrary and capricious. It is not the Court's role to rehash the BOP's decision-making process with a *de novo* review of all the available evidence. Because the BOP considered appropriate factors and articulated reasons for its decision, its denial of Vandagriff's application for the Pilot Program was not arbitrary capricious.

### III. All of Vandagriffs Other Arguments Also Lack Merit

Vandagriff makes several other arguments contending that the BOP's decision to deny his application to the Pilot Program was unlawful. All of them lack merit.

Vandagriff argues that the guidelines the BOP sets forth in its Operations Memorandum for determining whether an inmate is appropriate for home detention violate the APA's notice-and-comment requirement. Vandagriff is incorrect. First, it is highly unlikely that the APA's notice-and-comment requirement applies to the Operations Memorandum. The APA exempts

8

"interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice" from the rigors of notice and comment. 5 U.S.C. § 553(b)(A). The Operations Memorandum likely falls into one of these exempt categories. But the Court need not decide that question now because the BOP denied Vandagriff's application based on its determination that he did not meet the *statutory* eligibility requirements. Therefore, the BOP did not rely on its Operations Memorandum to deny Vandagriff's application, but rather denied his application based on the agency's interpretation of the statute.

This leads to Vandagriff's next argument—that the BOP's decision to deny Vandagriff's application was contrary to congressional intent. Vandagriff argues that disqualifying inmates, like him, who have a history of drug abuse and who lack marketable job skills would prevent a large number of otherwise eligible inmates from participating in the Pilot Program, in violation of Congress's intent in enacting the Second Chance Act. This argument also lacks merit. Whatever Congress did or did not intend when it passed the Second Chance Act, the text of the statute explicitly gives the BOP the authority to determine if an inmate is ineligible for the Pilot Program because he poses a "substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention." 42 U.S.C. § 17541(g)(5)(A)(vii). Although the meaning of a "substantial risk" of future criminal conduct or public endangerment may be somewhat ambiguous, the Court must defer to the BOP's interpretation because it is "based on a permissible construction of the statute." *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). Therefore, the Court cannot set aside the BOP's decision on this ground either.

As other district courts have recognized, federal courts may not interfere with the BOP's statutory authority to administer the Pilot Program. *See, e.g.*, *Kim*, 2010 WL 2813770, at *4; *United States v. Zindadil*, No. 90-119, 2010 WL 1002654, at *2 (M.D. Fla. Mar. 18, 2010); *United States v. Moore*, No. 93-310, 2009 WL 2970464, at *3 (M.D. Ala. Sept. 11, 2009). Because the BOP's determination that Vandagriff was not eligible to participate in the program was based on a permissible construction of the statute and was not arbitrary or capricious, his habeas petition is "obviously lacking in merit," *Allen,* 424 F.2d at 141. Therefore, it will be dismissed. *See* 28 U.S.C. § 2243.

## CONCLUSIONS

For these reasons, it is **ORDERED** that Vandagriff's habeas petition, R. 2, is **DISMISSED**. A separate Judgment will be entered contemporaneously with this Memorandum Opinion and Order.

This the 23rd day of November, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge